## WAUGH *v.* COOK.

### Opinion delivered May 11, 1914.

1.  BILLS AND NOTES—UNAUTHORIZED ALTERATION.—The unauthorized alteration of a promissory note by raising the rate of interest is a material alteration and avoids the same.    (Page 131.)

2.  BILLS AND NOTES—ALTERATION—RELEASE OF SURETY.—An agreement extending the time of payment, made by the principal debtor with the holder of a note, must, in order to release the surety, be such an agreement as the principal debtor may enforce.    (Page 132.)

3.  BILLS AND NOTES—ALTERATION—RELEASE OF SURETY.—An agreement between the principal debtor and the holder of a note to extend the time of its payment, made upon a false representation that the surety consented to such an extention will not release the surety, because the agreement is itself invalid, unenforceable, and not binding on the principal debtor.    (Page 132.)

4.  BILLS AND NOTES — ALTERATION — RATIFICATION. — Where plaintiff brought suit on a note which had been altered with his knowledge, but believing all the parties thereto had assented to the alteration, he will not be held to have ratified the alteration, when the same was actually done without authority.    (Page 133.)

Appeal from Independence Circuit Court; *R. E. Jeffery,* Judge; affirmed.

### STATEMENT BY THE COURT.

On the 3d day of February, 1913, Mrs. Lou Cook instituted this action in the circuit court against M. J. Compton, T. J. Hood, J. Arthur Porter, William A. Porter and C. H. Waugh, to recover upon a promissory note for seven hundred dollars, alleged to have been executed by them in her favor.    On the 7th day of April, 1913, the plaintiff dismissed the cause of action as to T. J. Hood and filed an amended complaint in which she stated

that subsequent to the delivery of the note originally sued on by her M. J. Compton, one of the original signers of the note, altered the same by raising the rate of interest from 8 to 10 per cent, and by allowing T. J. Hood to sign the note as surety, without the consent of the other signers to said note to make such alteration. The complaint states that plaintiff expressly disclaims any right under the note as altered, and seeks recovery on the note as originally executed.

The facts are as follows: At the time of, and prior to, the execution of the original note ·upon which this action is founded, M. J. Compton and J. Arthur Porter were partners in business in Independence County, Arkansas. They borrowed seven hundred dollars from Mrs. Cook on February 24, 1911, and William A. Porter and C. H. Waugh signed the note as sureties. Subsequently Compton purchased Porter's interest in the business and sold it to T. J. Hood. On February 4, 1912, a few days before the note became due, Mrs. Cook sent her son-in-law, Joe Martin, to collect it. Martin testified substantially as follows:

I went to Compton and demanded payment of the note. He told me that if the collection of the note was pressed the sureties would have to pay it. I told him that Mrs. Cook could get a higher rate of interest for her money. Compton told me that he would give her 10 per cent per annum, instead of 8 per cent, if payment of the note would be extended. I asked him what security they could give, and he said the same ones. I then carried the note back to Mrs. Cook to obtain her consent, and she gave it. I then carried the note back to Compton and told him that Mrs. Cook was a widow woman and I wanted the matter fixed right. I asked him if the securities would stand for it. I never received any information prior to the bringing of this suit that the sureties had not consented to the change in the note. Compton altered the note by raising the interest from 8 to 10 per cent, and the note was then signed by T. J. Hood. The other sureties to the note did not again sign it, but I

understood from Porter that they had agreed to it. He said in the first instance that he would give the same sureties.

In his cross examination, there appears the following:

Q. You did not tell her you had seen Mr. Waugh?

A. No, sir; I did not say anything about him. I did not know anything about my having to see him. I just took Compton to be a man of his word. He told me the same securities would stand.

Q. He just said that was his understanding?

A. He left the impression on me that he had done seen them and talked it over.

Q. He did not tell you that he had seen Mr. Waugh?

A. No; he did not just come right out and say that.

Q. And you did not ask him if he had seen Mr. Waugh?

A. No; I just asked him what securities he could give, and he said the same ones.

Mrs. Lou Cook testified: I understood from Mr. Martin that the sureties had consented to the change of interest in the note. I did not know that Mr. Waugh claimed that the note had been altered without his consent until after this suit was brought. As soon as I found out that he claimed that he had not authorized the change in the note, I filed an amended complaint in this action and disclaimed any rights under the note as altered, and sued on it as originally executed.

Other evidence was introduced in favor of plaintiff to the effect that payment of the note had been demanded of Waugh after the alterations in it were made and that Waugh did not at that time claim that he was released from liability on the note because it was altered.

Compton testified that he raised the rate of interest from 8 to 10 per cent, and that Hood signed the note. Compton says that he did not tell Martin that the same sureties would stand on the altered note; that he did not see them and did not know whether they would agree to the alteration or not.

C. H. Waugh testified: I knew nothing about the change of the rate of interest. I was not consulted about it by any one. I never gave my consent to any change in the note to anybody.

Other evidence introduced tended to show that the defendant, Waugh, was the only solvent signer of the note. The firm of Porter & Hood became bankrupt.

The jury returned a verdict in favor of the plaintiff, and the defendant, Waugh, has appealed.

*Dene H. Coleman* and *Chas. F. Cole,* for appellant.

1. Any unauthorized material alteration of a promissory note avoids it as to all nonconsenting parties. 5 Ark. 377; 27 Ark. 108; 32 Ark. 166; 35 Ark. 146; 48 Ark. 426; 57 Ark. 277. This is especially true as to nonconsenting *sureties.* 65 Ark. 550; 93 Ark. 472.

The contention that, although the alterations were, material and avoided the note, appellee should be permitted to recover upon the note as originally executed, would be good only as against *principals* or *makers* who received the consideration or some benefit under the contract in question, and who would be bound independently of the writing. 2 Am. & Eng. Enc. of L. (2 ed.) 200; 2 Cyc. 184-5; 63 Ia. 158.

Many courts have upheld the rule that after a material alteration, no recovery can be had against a nonconsenting surety either upon the original or altered terms of the contract. 68 Pa. 237; 4 T. R. 320; 3 L. R. A. 724-727; 24 L. R. A. (N. S.) 1155; 2 Cyc. 182; 13 Am. Dec. 684; 11 Bush (Ky.) 69; 93 Ark. 478-9; 65 Ark. 550.

2. The court should have given the instruction numbered 2, requested by appellant.

Appellee seeks to repudiate the altered instrument under the claim that she relied upon the fraudulent representation of Compton that "the same sureties would stand."

The means of ascertaining whether or not appellant had consented to the change were as accessible to appellee as to Compton. It was her duty to seek the assent of

the surety, and, in failing to do so, she took upon herself the hazard of changing the contract and relieved the surety. 65 Ark. 550; 4 Pa. St. 348.

She will be presumed to have informed herself of the truth of Compton's statements, and, if she has failed to do so, must abide the consequences of her own carelessness. 95 Ark. 136; 31 Ark. 170; 30 Ark. 686; 11 Ark. 58; 26 Ark. 28; 1 Ark. 31.

*Samuel M. Casey,* for appellee.

1. Appellee, relying upon the statement of Martin, her agent, that the sureties were consenting to the alteration, authorized him to have the note changed in accordance with their agreement. It subsequently developed that the sureties had not consented to it. The change, therefore, having been made without the consent of the sureties, it was also made without her consent.

An alteration of a note, allowed by an agent without authority, amounts to nothing more than an alteration, a spoliation, by a stranger, and the rights and liabilities of the parties are not affected thereby. 50 Ark. 360, and cases cited; 2 Cyc. 151, 152; *Id.* 155.

2. If appellee was bound by the act of Martin, she is nevertheless entitled to recover, because his consent to the alteration was obtained through fraud and misrepresentation practiced upon him by Compton, one of the makers of the note. 32 Cyc. 203; 55 Am. St. Rep. 871; 2 Mason, 478, 27 Fed. Cas. No. 16365.

HART, J., (after stating the facts). The unauthorized alteration of a promissory note by raising the rate of interest is a material alteration and avoids the note. *Exchange National Bank* v. *Little,* 111 Ark. 263, 164 S. W. (Ark.) 731; *N. Y. Life Ins. Co.* v. *Martindale et al.,* 75 Kan. 142, 12 Am. & Eng. Ann. Cas. 677.

In the case of *McDougall* v. *Walling,* 15 Wash. 78, 55 Am. St. Rep. 871, the court held:

"1. An agreement extending the time of payment made by the principal debtor with the holder of a note must, in order to release the surety, be such an agreement as the principal debtor may enforce.

"2.   An agreement between the principal debtor and the holder of the indebtedness to extend the time for its payment, made upon a false representation that the surety desired and consented to such extension will not release the surety, because the fraudulent misrepresentation employed in procuring it makes the agreement itself invalid, unenforceable, and not binding on the principal debtor."

In the case of *Bangs* v. *Strong,* 10 Paige (N. Y.) 11, the court held that where an agreement is obtained from the creditor by a principal debtor upon a false representation of the latter that the surety had authorized him to make it, and the surety afterward refused to assent to the agreement, the creditor will be at liberty to repudiate it.

It is contended by counsel for defendant that the testimony does not bring the case within the principles of law decided in these cases.   They contend that the testimony amounts to no more than a representation by Compton that, in his judgment, the sureties would still be liable on the note.   We do not agree with them in this contention.   We think that the jury was warranted in finding that Compton represented to Martin that the sureties had agreed that the alteration might be made in the note.   In other words, the jury might have inferred from the testimony of Martin, considered as a whole, that Compton represented to Martin that the sureties to the note had assented to the new arrangement and that such representations were false.   In such case the sureties would not be discharged unless the plaintiff had acted under the agreement after she was aware of the fact that it had been entered into without authority and that the sureties refused to assent to the same.

In the case of the *State* v. *Churchill et al.,* 48 Ark. 426, the court said that there is no better settled principle than that to hold one bound by any word or act as a waiver it must be shown that he spoke or acted with a knowledge of all the facts and circumstances attending the creation of the right he is alleged to have waived.

In 2 Cyc. 174, it is said: "Ordinarily, a plaintiff can not avoid the effect of an alteration of which he is chargeable with knowledge after he has brought suit upon the instrument in its altered form, since by suing upon the altered instrument he is deemed to have ratified the alteration; but if the suit is brought without knowledge of the alteration this will not amount to a ratification."

The testimony on the part of the plaintiff tends to show that at the time she originally instituted this action she did not have any knowledge that the defendant, Waugh, had not assented to the alteration in the note. She testified that she did not subsequently acquire such knowledge until after she instituted the suit, and that as soon as she found out that Waugh claimed that he had not assented to the alteration she repudiated any rights under the note as altered and filed an amended complaint in which she sought to recover upon the instrument as originally executed. The question of whether the alteration in the note was procured by the false representations of Compton to the effect that the sureties had consented thereto was submitted to the jury upon proper instructions.

The court also submitted to the jury the question of whether the plaintiff ratified the alteration in the note by her subsequent assent or acquiescence after she learned that the defendant, Waugh, claimed that such alteration had been made without his knowledge or consent. Objection is made by the defendant to one of these instructions because he was singled out in the instruction. We do not deem it necessary to set out the instruction. It is sufficient to say that the particular reference was made to Waugh because he was the only solvent signer to the note and was the only real defendant to the action.

Again, it is contended by counsel for defendant that the court erred in refusing to give instruction No. 2, which is as follows:

"In order to vitiate a contract on the ground of fraudulent representation or fraud, the misrepresentation or fraud must relate to a matter material to the contract and in regard to which the other party had a right to rely, and did rely. If the means of information as to the matters represented is equally accessible to both parties, they will be presumed to have informed themselves, and if they have not done so they must abide the consequences of their own carelessness."

There was no error in refusing this instruction. It is not claimed by plaintiff that she made a contract with the defendant, Waugh, for a change of the rate of interest in the note. She seeks to recover on the ground that Porter, one of the original makers of the note, represented to her that he had secured the consent of the sureties to make the alteration in the note, and that by such fraudulent representations procured her consent to the change in the note. If her testimony was true, there was no valid and binding agreement entered into between her and Porter for an alteration in the note, and the act of Porter in changing the note amounted to no more than the spoliation of it.

Other assignments of error are urged upon us for the reversal of the judgment, but we have carefully considered the instructions given by the court, as well as those refused by it, and are of the opinion that the respective theories of the parties were fully and fairly submitted to the jury. We find no prejudicial error in the record, and the judgment will be affirmed.